**Office of Disciplinary Counsel v. Simpson**

Disciplinary Board Docket no. 6 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GEPHART, *Member,* May 12, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On January 23, 2004, Office of Disciplinary Counsel filed a petition for discipline against Stephen W. Simpson, respondent. The petition charged respondent with commingling client funds and overdrawing his attorney escrow account, and engaging in the unauthorized practice of law. Respondent did not file an answer to petition.

A disciplinary hearing was held on July 8, 2004, before Hearing Committee 1.01 comprised of Chair Stewart L. Cohen, Esquire, and Members Leon W. Tucker, Esquire, and Patrick O. McDonald, Esquire. Respondent appeared pro se.

The Hearing Committee filed a report on January 24, 2005, finding that respondent violated the Rules of Professional Conduct and Rules of Disciplinary Enforcement as charged in the petition, and recommending that he be suspended for one year and one day.

This matter was adjudicated by the Disciplinary Board at the meeting of March 16, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania,

is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent, Stephen W. Simpson, was born in 1945 and was admitted to practice law in Pennsylvania in 1969. His last attorney registration address is 1600 Walnut Street, Suite 1107, Philadelphia, PA 19103. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline.

### Charge I—Misuse of IOLTA Account and Commingling Funds

(4) Respondent maintained an IOLTA account at Commerce Bank, captioned "Simpson and Associates LLC."

(5) Petitioner obtained respondent's bank records from his IOLTA account for the period of August 1, 2000 to June 2001. Petitioner's investigator-auditor, Diane Calabrese, prepared an IOLTA account spreadsheet. The spreadsheet reflects to a mathematical certainty all transactions on the IOLTA account between August 2000 and June 2001.

(6) Respondent used his IOLTA account as his attorney operating account into which he deposited fees and disbursed funds for general office expenses and malpractice insurance. In September 2000, respondent accepted and deposited into the IOLTA account a check in the

amount of $2,500 from Prime Public Adjusters Inc. The check was a partial retainer fee for services respondent rendered on behalf of the client for a real estate purchase and luxury limousine transaction.

(7) In March 2001, respondent accepted and deposited into his IOLTA account a check in the amount of $1,000 from United Settlement Services Inc. The check represented fees for services to be rendered on behalf of the client or a real estate closing.

(8) Respondent routinely commingled in the IOLTA account his funds with those of his clients.

(9) Respondent commingled his funds because he believed that: due to tax liens, any account in his name would be seized by the taxing authorities, and that the only way he could survive financially was to use his escrow account, which he admitted was inappropriate.

(10) For example, respondent commingled client funds and personal funds as follows:

(a) on February 23, 2001, respondent deposited into his IOLTA account a check in the amount of $10,000, payable to Vivian Young and Simpson and Associates;

(b) at the time of the deposit, respondent's IOLTA account contained his personal funds; and

(c) on February 23, 2001, respondent disbursed two checks to Ms. Young in the amounts of $4,309.18 and $300.

(11) There is no evidence that respondent misused any client funds that were held in the escrow account.

(12) Respondent alone had control over his IOLTA account and testified that he reconciled it "every couple of weeks." (N.T. p. 28.)

(13) Between November 2000 and September 2002, respondent engaged in a pattern of overdrawing his IOLTA account on at least 25 separate occasions.

(14) Respondent stated that his checks were returned for insufficient funds because checks had "not cleared when the checks were presented or did not clear." (N.T. p. 30.)

(15) Respondent received notices from the bank and the Lawyers Fund for Client Security about the over-drafts in his IOLTA account.

(16) The only corrective measures that respondent took to prevent the overdrafts was to "wait longer" before writing a check. (N.T. p. 31.)

(17) By order dated November 22, 1999, effective December 22, 1999, the Supreme Court of Pennsylvania transferred respondent to inactive status pursuant to Pa.C.L.E. 111.

(18) Respondent commingled his clients' funds and mishandled his IOLTA account when he was not authorized to practice law in Pennsylvania.

### *Charge II—Unauthorized Practice of Law*

(19) By letter dated November 22, 1999, Elaine M. Bixler, secretary to the Disciplinary Board, notified respondent of the Supreme Court's order transferring him to inactive status, effective December 22, 1999, for failing to comply with Pennsylvania Rules for Continuing Legal Education.

(20) Ms. Bixler's letter also informed respondent of the requirement under Pa.R.D.E. 217(e) that he file a verified statement of compliance with the board secretary within 10 days after the effective date of his transfer to inactive status.

(21) Respondent received the November 22, 1999 letter from Ms. Bixler.

(22) Respondent failed to file the verified statement of compliance.

(23) By letter dated February 16, 2000, Suzanne Price, attorney registrar, notified respondent that:

(a) the Pennsylvania Continuing Legal Education Board had certified that he was CLE compliant;

(b) he could not be transferred back to active status until he complied with Rule 219, Pa.R.D.E., by completing and returning the enclosed PA attorney's Annual Fee Form for 1999-2000 and paying $200; and

(c) complying with Rule 217 of the Pa.R.D.E. by filing a verified statement of compliance.

(24) Respondent received Ms. Price's letter of February 16, 2000.

(25) Respondent failed to comply with Rule 219, in that he did not make the $200 payment, and failed to comply with Rule 217(e), in that he did not file a verified statement of compliance.

(26) In or around October 3, 2001, respondent submitted the 2001-2002 PA Annual Attorney Fee Form and enclosed a check for $375 drawn on an account entitled "Simpson and Associates LLC, escrow account."

(27) The attorney registrar returned the check to respondent as it was drawn on his escrow account.

(28) Respondent did not re-submit the payment.

(29) Respondent remained on inactive status.

(30) Respondent remained ineligible to practice law.

(31) On June 27, 2002, Alan M. Kaplan, Esquire, of respondent's office, filed a civil action in the Court of

Common Pleas of Philadelphia County, on behalf of George and Brenda Stovall.

(32) On December 10, 2002, Mr. Kaplan withdrew his appearance and respondent filed a praecipe to enter his appearance on behalf of the Stovalls.

(33) On February 21, 2003, Roland J. Atkins, Esquire, attorney for defendants, filed a petition for stay by reason of unauthorized practice of law based on respondent's ineligibility to practice law.

(34) By order dated March 6, 2003, the honorable Norman Ackerman set a rule returnable hearing for respondent to appear before the court on March 19, 2003, and present evidence as to why the stay should not be granted and why appropriate sanctions should not be imposed on respondent.

(35) Respondent received a copy of the order but failed to appear for the March 19, 2003 hearing. By order dated March 19, 2003, Judge Ackerman removed respondent as counsel.

(36) By letter dated April 29, 2003, addressed to the Disciplinary Board, respondent stated that he had recently learned that his license to practice law in Pennsylvania had been "suspended," and he requested information as to what steps he was required to take to be reinstated.

(37) Respondent's statement that he recently learned of his "suspended" status was not true, as he was aware that he was placed on inactive status in November 1999.

(38) Between December 1999 and April 2003, respondent held himself out as an attorney permitted to practice law in the Commonwealth.

(39) Between December 1999 and April 2003, respondent handled approximately 100 legal matters. These

matters included real estate transactions, general advice, creating entities, reviewing papers, and one case where respondent entered his appearance and went to court to reschedule a hearing. Respondent did not inform his clients that he was an inactive attorney.

(40) Respondent freely and sincerely admitted his mistakes, misjudgments and rules violations.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

(2) R.P.C. 1.16(a)(1)—A lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in violation of the Rules of Professional Conduct or other law.

(3) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

(4) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

(5) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(6) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(7) Pa.R.D.E. 203(b)(3)—Willful violation of any provision of the Enforcement Rules shall constitute misconduct and shall be grounds for discipline via:

(a) Pa.R.D.E. 217(c)—A formerly admitted attorney shall promptly notify, or cause to be notified, of the transfer to inactive status, all persons or their agents or guardians to whom a fiduciary duty is or may be owed at any time after the transfer to inactive status, and all other persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer that he or she continues as an attorney in good standing.

(b) Pa.R.D.E. 217(d)—Orders imposing transfer to inactive status shall be effective 30 days after the entry. The formerly admitted attorney, after entry of the transfer to inactive status order, shall not accept any new retainer or engage as attorney for another in any new case or legal matter of any nature.

(c) Pa.R.D.E. 217(e)—Within 10 days after the effective date of the transfer to inactive status order, the formerly admitted attorney shall file with the board a verified statement showing that the provisions of the order and Rule 217 have been fully complied with, and all of the state, federal, and administrative jurisdictions to which such person is admitted to practice. Such statement shall also set forth the residence or other address of the formerly admitted attorney where communications to such person may be thereafter directed.

(d) Pa.R.D.E. 217(j)(4)(iv)—A formerly admitted attorney is specifically prohibited from engaging in representing himself or herself as a lawyer or person of similar status.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with the unauthorized practice of law and commingling of client funds. Respondent did not file an answer, therefore all factual allegations contained in the petition for discipline are deemed admitted. In addition, respondent stipulated that he violated all Rules of Disciplinary Enforcement and Rules of Professional Conduct set forth in the petition for discipline. The stipulations, exhibits, and hearing testimony amply support the rule violations. Petitioner has met its burden of proof and established that respondent's conduct violated the rules.

Respondent received notice in November 1999 that he had not fulfilled his continuing legal education requirements and was transferred to inactive status. After he completed his CLE credits, shortly after his transfer to inactive status, he subsequently failed to properly complete the attorney registration form, pay the annual fee, and comply with the administrative requirements for reinstatement. Although respondent was notified of the prerequisites to the resumption of the practice of law, he failed to fulfill them. These prerequisites were not onerous. Instead, respondent chose to practice law without a current license, handling approximately 100 matters from December 1999 through April 2003. Respondent even entered his appearance in a court proceeding, albeit

briefly. Respondent never advised his clients that he was ineligible to practice law.

In addition to his lengthy unauthorized practice of law, respondent engaged in other professional misconduct. Respondent deposited personal funds into his IOLTA account when he was using that account to maintain client funds, thereby commingling the funds. Respondent also issued 25 bad checks.

Mitigating factors are present in this matter. Respondent showed remorse for his actions and cooperated with petitioner by entering into extensive stipulations of facts and law. Respondent has not received discipline in the past. Respondent offered no witnesses in mitigation, but his own testimony was evidence of the personal and financial pressures, guilt and embarrassment that he has endured.

The board has previously considered cases involving the unauthorized practice of law following transfer to inactive status. Applicable precedent establishes that suspension results from such misconduct, the length of which depends on the aggravating and mitigating circumstances present. Additional charges of misconduct in conjunction with the unauthorized practice may require a longer suspension. The rationale for suspension is that an attorney has an affirmative duty to know the status of his privilege to practice law and to comply with the professional requirements. The acts of fulfilling continuing legal education credits, filing an annual registration form and paying an annual fee are not mere ministerial duties, but part and parcel of the privilege of practicing law in the Commonwealth.

A sampling of recent discipline cases supports the imposition of a suspension of not less than one year and

one day. In the matter of *Office of Disciplinary Counsel v. Brown,* 64 D.B. 2003, 954 Disciplinary Docket no. 3 (Pa. Oct. 15, 2004), Mr. Brown was employed as a part-time public defender in Erie County. While on inactive status, he defended at least 97 criminal defendants from January 2001 to February 2002. He was suspended for one year and one day. In the matter of *Office of Disciplinary Counsel v. Forman,* 70 D.B. 2001, 799 Disciplinary Docket no. 3 (Pa. Jan. 31, 2003), Mr. Forman continued to practice law for 12 years while on inactive status and was suspended for one year and one day for this misconduct. In *Office of Disciplinary Counsel v. Harris,* 150 D.B. 2002, 930 Disciplinary Docket no. 3 (Pa. July 15, 2004), Mr. Harris continued to represent a client after his transfer to inactive status and maintained an office with a large sign advertising himself as an attorney-at-law. The board noted that attorneys who engage in such activity cause harm to their unsuspecting clients and to the general public. Mr. Harris was suspended for one year and one day.

Another similar instance of misconduct resulted in a two-year suspension for the attorney. In *Office of Disciplinary Counsel v. Jones,* 71 D.B. 1999 and 126 D.B. 1999, no. 531 Disciplinary Docket no. 3 (Pa. Aug. 15, 2001), Mr. Jones engaged in at least 20 instances of the unauthorized practice of law during a 17-month period of time, and in addition was found to have inadequately represented and communicated with clients. There was no question that Mr. Jones had received notice of his transfer to inactive status and understood the effect of the inactive status, although Mr. Jones initially attempted to argue his lack of knowledge in the matter. Mr. Jones had a prior history of two informal admonitions.

Application of the strong line of precedent to respondent's actions leads the board to conclude that a suspension of two years is appropriate. He engaged in a wide scope of unauthorized practice of law, handling at least 100 matters for approximately three and a half years. He never informed his clients that he was on inactive status. Additionally, respondent engaged in fiscal irresponsibility by depositing personal funds into his IOLTA account when he was using that account to maintain client funds. Respondent did admit his wrongdoing and demonstrate remorse; however, the court has plainly found that such misconduct is contemptuous and has imposed suspensions of at last one year and one day even in matters involving a short period of time and very few clients, such as the case at 150 D.B. 2002. Respondent's misconduct warrants a two-year suspension.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Stephen W. Simpson, be suspended from the practice of law for a period of two years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Sheerer dissented and would recommend a three-year suspension.

Board Member Curran did not participate in the matter.

Board Members McLaughlin, Brown, Pietragallo and Nordenberg did not participate in the March 16, 2005 adjudication.

## ORDER

And now, July 22, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated May 12, 2005, it is hereby ordered that Stephen W. Simpson be and he is suspended from the bar of this Commonwealth for a period of two years, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.